[No. S167169. Apr. 26, 2010.]

PEARSON DENTAL SUPPLIES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LUIS TURCIOS, Real Party in Interest.

COUNSEL

Law Offices of Russell F. Behjatnia and Russell F. Behjatnia for Petitioner.

Jones Day, George S. Howard, Jr., and Kristine S. Tremble for Employers Group as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Altshuler Berzon, Michael Rubin, Rebecca Smullin; Lavi & Ebrahimian, N. Nick Ebrahimian, Joseph Lavi, Jordan D. Bello; The deRubertis Law Firm and David M. deRubertis for Real Party in Interest.

McGuinn, Hillsman & Palefsky, Cliff Palefsky and Keith Ehrman for California Employment Lawyers Association as Amicus Curiae on behalf of Real Party in Interest.

OPINION

**MORENO, J.**—We have emphasized in our case law the limited nature of judicial review of contractual arbitration awards, concluding that, generally speaking, a court is not permitted to vacate an arbitration award when the award is based on errors of law. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 25, 28 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) We also have indicated that the scope of judicial review may be somewhat greater in the case of a mandatory employment arbitration agreement that encompasses an employee's unwaivable statutory rights. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 106–107 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

In the present case involving the resolution of a statutory employment discrimination claim, an arbitrator decided in favor of an employer against the employee on the grounds that the claim was time-barred under the one-year contractual deadline for requesting arbitration. The trial court vacated the award, concluding, as explained below, that the arbitrator had plainly misapplied the relevant tolling statute, Code of Civil Procedure section 1281.12. The Court of Appeal, while agreeing with the trial court that the arbitrator had erred, held nonetheless that such error was not a valid basis for vacating an arbitration award and reversed the trial court.

We conclude that the trial court and Court of Appeal are indeed correct that the arbitrator clearly erred in ruling that the employee's claim was time-barred. We further conclude that under the particular circumstances of this

case, in which a clear error of law by an arbitrator means that an employee subject to a mandatory arbitration agreement will be deprived of a hearing on the merits of an unwaivable statutory employment claim, the trial court did not err in vacating the award. We therefore reverse the judgment of the Court of Appeal.

In a second issue, the employee argues that language in the arbitration agreement indicating that he is relinquishing not only the right to go to court but also to access administrative remedies is unconscionable, and that therefore not only should the arbitration award be vacated but the entire arbitration agreement should be invalidated. As explained below, we conclude the language in question is reasonably susceptible to a lawful interpretation, and therefore reject the employee's claim of unconscionability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Luis Turcios was hired as a janitor by defendant Pearson Dental Supplies, Inc., in February 1999. He was terminated on January 31, 2006, at the age of 67. He filed an administrative complaint with the Department of Fair Employment and Housing (DFEH) on April 5, 2006, claiming age discrimination. On April 14, 2006, the DFEH issued a right-to-sue letter.

On October 2, 2006, plaintiff filed a complaint against defendant in Los Angeles Superior Court alleging age discrimination in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), wrongful termination in violation of public policy, and breach of an implied-in-fact contract or obligation not to terminate him without good cause. On November 8, 2006, Pearson filed a demurrer and motion to strike, contending plaintiff's claims of age discrimination and contractual violation were insufficiently detailed. The trial court overruled the demurrer and motion to strike on December 11, 2006. Defendant filed its answer on December 29, 2006, raising 31 affirmative defenses. In neither the demurrer nor the answer did defendant mention an arbitration agreement or plaintiff's obligation to arbitrate.

The case proceeded with discovery, and in a joint case management conference statement submitted to the trial court on February 16, 2007, defendant requested a jury trial and anticipated the trial would last three days. During a February 20, 2007, case management conference, defendant's counsel mentioned, for the first time, that there was an arbitration agreement in plaintiff's personnel file, and that this was something he "would have to explore."

On March 13, 2007, defendant filed a motion to compel arbitration, contending that plaintiff was bound by a dispute resolution agreement (DRA)

he had signed in January 2001. The agreement stated that "to avoid the inconvenience, cost, and risk that accompany formal administrative or judicial proceedings," the parties agreed to arbitrate disputes arising out of the employment relationship. The arbitration was to be conducted by a "mutually agreed upon arbitrator pursuant to the California Arbitration Act" (CAA; Code Civ. Proc., § 1280 et seq.). The agreement also provided that any covered dispute "must be submitted to binding arbitration within one year from the date the dispute arose or the employee or Pearson first became aware of the facts giving rise to the dispute. If any employment related dispute which may arise is not submitted to binding arbitration within one year from the date the dispute arose or the Employee or Pearson first became aware of facts giving rise to the dispute, Pearson and the Employee agree that the claim shall be void and considered waived to the fullest extent allowed by law." Plaintiff concurrently signed a document in Spanish advising him, inter alia, of the DRA and the intention to arbitrate disputes.

On March 29, 2007, plaintiff filed an opposition to the petition to compel arbitration, arguing primarily that defendant had waived its right to demand arbitration by participating in the litigation. Plaintiff, whose primary language was Spanish, also contended he had not understood the DRA and that therefore it was not a valid agreement. On May 2, 2007, the trial court by written order granted defendant's petition. It rejected plaintiff's waiver arguments and found the agreement was valid and not unconscionable. Plaintiff filed a writ petition challenging the trial court's order. The Court of Appeal summarily denied the petition on May 31, 2007.

On June 13, 2007, plaintiff and defendant agreed upon an arbitrator. On July 24, 2007, defendant filed with the arbitrator a motion for summary judgment, contending that plaintiff's claims were time-barred by the DRA, because they had been submitted to arbitration over a year after plaintiff's termination on January 31, 2006. Plaintiff opposed the motion, contending that the one-year statute of limitations was substantively unconscionable, in part because it was shorter than the statute of limitations provided for FEHA claims.[1] Plaintiff also claimed that, even if the one-year period was valid, it had not yet run, because it had been tolled pursuant to Code of Civil Procedure section 1281.12, as discussed below, from the time the lawsuit was filed to 30 days after the time the order compelling arbitration became final.

The arbitrator, in a brief letter, ruled in favor of defendant on October 17, 2007, and granted its motion for summary judgment. The arbitrator stated

---

[1] Under FEHA, an administrative complaint filed with the DFEH must be filed within one year of the date of the alleged discriminatory action. (Gov. Code, § 12960, subd. (d).) The DFEH, if it decides not to pursue the matter, must issue a right-to-sue letter no later than a year after the complaint is filed. (*Id.*, § 12965, subd. (b).) The complainant then has one year from the date of that letter to file a civil action. (*Id.*, subd. (d)(2).)

simply that plaintiff's "failure to submit his claims and disputes to binding arbitration within the one-year period as required by the Dispute Resolution Agreement or within the tolling period prescribed in Code of Civil Procedure section 1281.12 has resulted in a waiver of his right to proceed in this arbitration against his employer . . . ."

Defendant petitioned the superior court to confirm the award on December 5, 2007. Plaintiff filed a motion to vacate the arbitrator's award on December 17, 2007. Plaintiff then filed an opposition to defendant's petition to confirm the arbitrator's award on December 26, 2007.

The trial court vacated the arbitration award on January 28, 2008. The court (Judge Alan Rosenfield) concluded that the arbitrator had made a clear error of law by, among other things, misinterpreting the tolling provisions of Code of Civil Procedure section 1281.12. The court further concluded that under our holding in *Armendariz*, *supra*, 24 Cal.4th 83, the court was required to conduct judicial review sufficient to protect the plaintiff's unwaivable statutory rights arising from his FEHA claims and, pursuant to that authority, the court ruled the arbitrator had acted in excess of his jurisdiction and vacated the arbitration award.

Defendant petitioned for a writ of mandate, and the Court of Appeal reversed. Although the court rejected plaintiff's argument that the DRA's one-year limitation period was unconscionable, it agreed with plaintiff and with the court below that the arbitrator had "misapplied the tolling period provided by section 1281.12." The court nonetheless concluded that the arbitrator's erroneous decision "is insulated from judicial review and is not a proper basis upon which either to deny confirmation of the arbitration award or to vacate the award."

Plaintiff petitioned for review in this court, raising two questions: First, what standard of judicial review should a trial court employ to ensure that an employee's antidiscrimination claim brought under FEHA is adequately protected when arbitrated pursuant to a mandatory employment arbitration agreement? Second, is a mandatory employment arbitration agreement restricting an employee from seeking administrative remedies for violations of FEHA unlawful? We granted review.

## II. DISCUSSION

### A. *Did the Trial Court Err by Vacating the Arbitration Award?*

In order to resolve the first issue presented by this case, we address two questions: First, did the arbitrator make an error of law in granting defendant

summary judgment on the grounds that plaintiff's arbitral demand was time-barred? Second, if the arbitrator did make such an error, was that sufficient grounds for the trial court to vacate the arbitration award?

### 1. *The Arbitrator Committed a Clear Error of Law*

In order to determine whether the arbitrator committed an error of law, we begin with the pertinent statute. Code of Civil Procedure section 1281.12 states in full: "If an arbitration agreement requires that arbitration of a controversy be demanded or initiated by a party to the arbitration agreement within a period of time, the commencement of a civil action by that party based upon that controversy, within that period of time, shall toll the applicable time limitations contained in the arbitration agreement with respect to that controversy, from the date the civil action is commenced until 30 days after a final determination by the court that the party is required to arbitrate the controversy, or 30 days after the final termination of the civil action that was commenced and initiated the tolling, whichever date occurs first."

Neither of the parties disputes that Code of Civil Procedure section 1281.12 applies in the present proceeding. Here, the arbitration agreement required that a dispute "must be submitted to binding arbitration within one year from the date the dispute arose" or "the claim shall be void and considered waived to the fullest extent allowed by law." Plaintiff, the party required to initiate the action, instead commenced a civil action within the one-year period. The commencement of this civil action therefore tolled the applicable time limitation until the final order compelling arbitration.

■ According to its legislative history, the statute prevents "parties from being either forced to abide by arbitration agreements of dubious validity instead of seeking court evaluation, initiating costly and duplicative proceedings, or being unfairly deprived of any forum for resolution of the dispute. Supporters observe that there are many legitimate reasons why a party might file a lawsuit in court, rather than demanding or pursuing arbitration. Among these are the following: (1) the plaintiff may believe the claims are not subject to arbitration because the arbitration agreement is unenforceable on grounds of unconscionability or similar concepts; (2) there may be a dispute about whether the particular claims at issue do or do not fall within the scope of an arbitration agreement; (3) the plaintiff may contend that one or more of the statutory grounds for denying a petition to compel arbitration set forth in Code of Civil Procedure section 1281.2 exist, assuming the defendant does file a petition to compel arbitration in response to the plaintiff's filing of the lawsuit; (4) the plaintiff may prefer a court trial or jury trial and simply be hopeful that the defendant will not assert any right to arbitrate the claims, for whatever reason [indeed, the defendant may decide that it prefers a court

proceeding as well]; and (5) the plaintiff might not even be aware that there is an arbitration agreement governing the controversy." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1553 (2005–2006 Reg. Sess.) for hearing Apr. 5, 2005, p. 3, underscoring & extra capitalization omitted.) Thus, the statute unquestionably applies in the present case, when a plaintiff files a timely action in superior court, and a defendant, either deliberately or through inadvertence, allows the lawsuit to proceed, asserting its right to arbitration only after the limitations period provided in the arbitration agreement has expired.

The parties disagree, however, on how the tolling provision of Code of Civil Procedure section 1281.12 operates in the present case. As recounted above, plaintiff was terminated on January 31, 2006, and filed a civil action on October 2, 2006, well within the one-year period. The parties disagree on when the order to arbitrate became final, with defendant arguing the date was either April 12, 2007, when the trial court orally informed the parties of its ruling in favor of defendant's petition to compel arbitration, or May 2, 2007, when the trial court issued a written order. Plaintiff affixes the date on May 31, 2007, when the Court of Appeal summarily denied plaintiff's writ petition challenging the trial court's grant of defendant's petition to compel arbitration.

We do not know the arbitrator's reasons for concluding Code of Civil Procedure section 1281.12 did not save plaintiff's claim, but we do have defendant's arguments in defense of the arbitral decision, which may have been adopted by the arbitrator. Defendant states in its brief before this court: "If the tolling provisions of Code of Civil Procedure section 1281.12 were applicable, then the one-year limitation period expired 30 days after either April 12, 2007, when the trial court issued from the bench its final order, or May 2, 2007 when the trial court granted [defendant's] Petition to Arbitrate by Order." Therefore, plaintiff's first attempt to seek arbitration, which according to defendant was on June 13, 2007, when he agreed to an arbitrator, was untimely by defendant's reasoning.

■ To understand the error of defendant's position, we begin with the meaning of "tolling." To "toll" has been defined most pertinently as "to stop the running of; to abate <toll the limitations period>." (Black's Law Dict. (8th ed. 2004) p. 1525.) When it comes to the tolling of a statute of limitations, we have stated: "Tolling may be analogized to a clock that is stopped and then restarted. Whatever period of time that remained when the clock is stopped is available when the clock is restarted, that is, when the tolling period has ended." (*Woods v. Young* (1991) 53 Cal.3d 315, 326, fn. 3 [279 Cal.Rptr. 613, 807 P.2d 455].)

■ The only way to make sense of defendant's position is to understand it as asserting that what is being tolled is not the running of the one-year contractual limitations period, but the contractual one-year deadline itself. In other words, according to defendant's position, the contractual limitations period continues to run after a lawsuit is filed, but the actual one-year period deadline, if and when it is reached, is tolled, i.e., temporarily abated; the deadline then is reinstated 30 days after a plaintiff is compelled by judicial determination to arbitrate, leading to termination of the right to arbitrate if a plaintiff fails to initiate arbitration within that 30-day period. What makes this interpretation untenable is not only that it is at variance with the common understanding of the term "tolling," but also that it contradicts the express language of Code of Civil Procedure section 1281.12 that tolling starts "from the date the civil action is commenced." This language establishes that what is being tolled is the running of the contractual limitations period itself, as plaintiff argues.

Under a proper interpretation of Code of Civil Procedure section 1281.12, therefore, plaintiff's claim was not time-barred. Leaving aside any tolling of the statute that may have resulted from the filing of a complaint with the DFEH, approximately eight months had passed between the time of the termination on January 31, 2006, and October 2, 2006, when plaintiff filed a complaint in superior court. Choosing arguendo the earliest date defendant offers for when the trial court's order to arbitrate became final, April 12, 2007, then, by the terms of Code of Civil Procedure section 1281.12, the tolling ended 30 days after that, on May 12, 2007. But the end of the tolling period simply means that the contractual limitations clock began to run again, not that the limitations period ended. Because there were approximately four months left on the one-year limitation period when the civil action was filed, even if there was no FEHA tolling, then plaintiff had four months from the May 12, 2007, date to initiate the arbitration. Plaintiff's initiation, which even by defendant's calculation was no later than June 13, 2007, was well within this period. Therefore, the trial court and the Court of Appeal were both correct in concluding that the arbitrator misapplied the tolling provision and on that basis erroneously granted summary judgment for defendant.

2. *Did This Error of Law Serve As a Proper Basis for Vacating the Arbitration Award?*

In assessing whether the trial court was correct in vacating the arbitrator's award due to arbitral error, we begin by reviewing pertinent case law. In *Moncharsh, supra,* 3 Cal.4th 1, a case involving an arbitration between an attorney and his former law firm over certain claims arising from his employment agreement, we noted that "arbitration proceedings are governed by title 9 of the Code of Civil Procedure, sections 1280–1294.2. Section

1286.2 sets forth the grounds for vacation of an arbitrator's award. It states in pertinent part: '[T]he court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.' " (*Moncharsh, supra,* 3 Cal.4th at pp. 12–13.)

The *Moncharsh* court rejected a line of earlier cases that had held or suggested that notwithstanding these statutory criteria for vacating an arbitration award, an award may also be vacated when an error of law appears on the face of the arbitrator's decision and causes substantial injustice. (*Moncharsh, supra,* 3 Cal.4th at p. 13.) Instead, after an extensive review of the historical development of arbitration and judicial review of arbitration awards, the court made clear " 'that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.' " (*Id.* at p. 25.)[2]

We further rejected the argument that Code of Civil Procedure section 1286.2, subdivision (d) (now subd. (a)(4)), which authorizes an arbitration award to be vacated if the arbitrators "exceeded their powers," was a basis for reviewing errors of law in an arbitration award. "It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. To the extent Moncharsh argues his case comes within section 1286.2, subdivision (d) merely because the arbitrator reached an erroneous decision, we reject the point." (*Moncharsh, supra,* 3 Cal.4th at p. 28.)

█ The *Moncharsh* court recognized "that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision" such as when "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Moncharsh, supra,* 3 Cal.4th at p. 32.) Because the issue did not arise in that case, the *Moncharsh* court had no occasion to develop this exception.

---

[2] We recently held that the parties could indeed expressly provide in an arbitration agreement for expanded judicial review. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*Cable Connection*).) No such contractual provision is at issue in the present case.

■ In *Armendariz, supra,* 24 Cal.4th 83, a case involving an alleged violation of the statutory right to be free of sexual harassment under FEHA, we considered the validity of a mandatory employment arbitration agreement, i.e., an adhesive arbitration agreement that an employer imposes on the employee as a condition of employment. (*Armendariz, supra,* 24 Cal.4th at pp. 91–92, 103, fn. 8.) Although holding that such an agreement is enforceable, we concluded that "it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA" (*id.* at p. 101), because the enforcement of such rights was for the public benefit and was not waivable (*id.* at pp. 100–101). We concluded that a party to such an arbitration agreement must be able to fully vindicate his or her statutory cause of action in the arbitral forum. (*Id.* at p. 101.) In order to ensure such vindication, "we held that arbitration of claims under the FEHA is subject to certain minimal requirements: (1) the arbitration agreement may not limit the damages normally available under the statute (*Armendariz, supra,* 24 Cal.4th at p. 103); (2) there must be discovery 'sufficient to adequately arbitrate their statutory claim' (*id.* at p. 106); (3) there must be a written arbitration decision and judicial review ' "sufficient to ensure the arbitrators comply with the requirements of the statute" ' (*ibid.*); and (4) the employer must 'pay all types of costs that are unique to arbitration' (*id.* at p. 113)." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979].)

■ In the present case, we are concerned with the third requirement above—adequate judicial review. We quote in full this portion of *Armendariz:* "As the United States Supreme Court has stated: '[A]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue. (*Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 232 [96 L.Ed.2d 185, 107 S.Ct. 2332] (*McMahon*).) In *Moncharsh,* we acknowledged that judicial review may be appropriate when 'granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights.' (*Moncharsh, supra,* 3 Cal.4th at p. 32; see also *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 276–277 [52 Cal.Rptr.2d 115, 914 P.2d 193].)

"We are not faced in this case with a petition to confirm an arbitration award, and therefore have no occasion to articulate precisely what standard of judicial review is 'sufficient to ensure that arbitrators comply with the requirements of [a] statute.' (*McMahon, supra,* 482 U.S. at p. 232 . . . .)[3] All

---

[3] The concurring and dissenting opinion claims that we mischaracterize this statement in *McMahon,* contending that the Supreme Court "repeatedly cites this very same statement when rejecting claims that the [Federal Arbitration Act's] provisions for judicial review, which do not authorize review for error, are too limited to protect rights under a statutory antidiscrimination

we hold today is that in order for such judicial review to be successfully accomplished, an arbitrator in a FEHA case must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based. While such written findings and conclusions are not required under the CAA [citations], nothing in the present arbitration agreement precludes such written findings, and to the extent it

---

law." (Conc. & dis. opn., *post*, at p. 688.) However, the concurring and dissenting opinion's categorical statement that "the FAA's provisions for judicial review . . . do not authorize review for error . . ." (conc. & dis. opn., *post*, at p. 688) is inaccurate, and the matter is in fact far more complex. As reviewed in *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 584–585 [170 L.Ed.2d 254, 128 S.Ct. 1396], federal courts have long held that "manifest disregard of the law" is a ground for vacating an arbitration award, although there was controversy among the circuits about the extent to which that formulation authorizes review for legal error. Even after *Hall Street*, in at least a number of circuits, the "manifest disregard" standard survives, not as an independent ground for vacating arbitration awards, but as part of the statutory authorization that arbitration awards may be vacated when arbitrators "exceed[] their powers." (9 U.S.C. § 10(a)(4); see *Comedy Club, Inc. v. Improv West Assocs.* (9th Cir. 2009) 553 F.3d 1277, 1290; *Citigroup Global Mkts., Inc. v. Bacon* (5th Cir. 2009) 562 F.3d 349, 357; *Stolt-Neilsen SA v. AnimalFeeds Internat. Corp.* (2d Cir. 2008) 548 F.3d 85, 94–95, revd. on other grounds (2010) 559 U.S. ___ [176 L.Ed.2d 605, 130 S.Ct. 1758].) It has been said that the manifest disregard standard permits vacatur of arbitration awards under certain circumstances when an arbitrator's decision "strains credulity" (*Stolt-Neilsen SA, supra,* 548 F.3d at pp. 92–93), and it is indeed questionable whether the arbitrator's ruling in the present case would have survived application of that standard were this case being litigated in federal court (see *Comedy Club, Inc., supra,* at pp. 1290–1294). It is against the background of this "manifest disregard of the law" standard that the above quotation from *McMahon* must be understood.

Moreover, in this case we interpret and apply the CAA, not federal law. No matter how the Supreme Court eventually resolves the judicial review issue under the Federal Arbitration Act, we need not and do not move in lockstep with the federal courts in matters of judicial review of arbitration awards, as we recently reaffirmed in *Cable Connection* in departing from *Hall Street* by permitting parties to contract to expand judicial review of legal error. (*Cable Connection, supra,* 44 Cal.4th at pp. 1354–1355.) We have also gone our own way in *Moncharsh,* articulating a strict review standard precluding vacatur for legal error that does not include a "manifest disregard" exception, while at the same time leaving open the possibility of greater judicial review, as discussed above, in the case of rulings inconsistent with the protection of statutory rights. (*Moncharsh, supra,* 3 Cal.4th at p. 32.) We elaborated on this statutory exception in *Armendariz* and do so again today, and in doing so recognize that *McMahon*'s statement that judicial review of arbitration awards is "sufficient to ensure that arbitrators comply with the requirements of [a] statute" (*Shearson/American Express, Inc. v. McMahon, supra,* 482 U.S. at p. 232) has a normative as well as a descriptive meaning. Significantly, the concurring and dissenting opinion neither repudiates the above statement in *McMahon,* nor proposes a coherent alternative interpretation of that statement.

Finally, the concurring and dissenting opinion's position, especially viewed together with our holding in *Cable Connection,* would significantly increase the level of inequality in our arbitration system. While those with resources to negotiate may, if they wish, obtain full judicial review of an arbitrator's legal error, those on whom contracts of adhesion are imposed would receive no judicial review even of plain arbitral errors that result in a denial of a hearing on the merits on an unwaivable statutory claim. The concurring and dissenting opinion implicitly contends that such gross inequality is mandated by the CAA. For reasons explained in this opinion, we disagree.

applies to FEHA claims the agreement must be interpreted to provide for such findings. In all other respects, the employees' claim that they are unable to vindicate their FEHA rights because of inadequate judicial review of an arbitration award is premature." (*Armendariz, supra*, 24 Cal.4th at pp. 106–107.)

More recently, in *Cable Connection*, in deciding that parties may contract for heightened judicial review, we recognized the "public policy exceptions to the general rule of limited [judicial] review"; for example, "when unwaivable statutory rights are at stake, this court has repeatedly held that review must be ' "sufficient to ensure that arbitrators comply with the requirements of the statute." ' " (*Cable Connection, supra*, 44 Cal.4th at p. 1353, fn. 14, quoting the portion of *Armendariz* cited above.)

In the present case, we are faced precisely with the question that was prematurely posed in *Armendariz*, i.e., the proper standard of judicial review of arbitration awards arising from mandatory arbitration employment agreements that arbitrate claims asserting the employee's unwaivable statutory rights. As an initial matter, we reject the suggestion of amicus curiae Employers Group, echoed by the concurring and dissenting opinion, that all *Armendariz* requires is a written arbitral award. Obviously, we did not envision such a written award as an idle act, but rather as a precondition to adequate judicial review of the award so as to enable employees subject to mandatory arbitration agreements to vindicate their rights under FEHA. That being said, we note that the arbitrator's award in the present case did not even comply with the requirements set forth in *Armendariz* that "an arbitrator in a FEHA case must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." (*Armendariz, supra*, 24 Cal.4th at p. 107.) The arbitrator stated that plaintiff had failed to "submit his claims and disputes to binding arbitration within the one-year period as required by the Dispute Resolution Agreement or within the tolling period prescribed in Code of Civil Procedure section 1281.12," without explaining, even briefly, his reasoning as to why plaintiff did not benefit from the tolling period.

Nor need we decide whether the rules suggested by plaintiff and amicus curiae California Employment Lawyers Association is correct that all legal errors are reviewable in this context, or that all errors involving the arbitration statute itself are reviewable. We address only the case before us, and a narrower rule is sufficient for its resolution. Here, as a result of the arbitrator's clear legal error, plaintiff's claim was incorrectly determined to be time-barred. Indeed, the legal error misconstrued the procedural framework under which the parties agreed the arbitration was to be conducted, rather

than misinterpreting the law governing the claim itself.[4] It is difficult to imagine a more paradigmatic example of when "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights" (*Moncharsh, supra,* 3 Cal.4th at p. 32) than the present case, in which, as a result of allowing the procedural error to stand, and through no fault of the employee or his attorney, the employee will be unable to receive a hearing on the merits of his FEHA claims *in any forum.* Nor can it be plausibly argued that plaintiff merely received the justice he bargained for. It is beyond dispute that there was no opportunity for bargaining over the arbitration agreement in this case.

■ We therefore hold that when, as here, an employee subject to a mandatory employment arbitration agreement is unable to obtain a hearing on the merits of his FEHA claims, or claims based on other unwaivable statutory rights, because of an arbitration award based on legal error, the trial court does not err in vacating the award. Stated in other terms, construing the CAA in light of the Legislature's intent that employees be able to enforce their right to be free of unlawful discrimination under FEHA, an arbitrator whose legal error has barred an employee subject to a mandatory arbitration agreement from obtaining a hearing on the merits of a claim based on such right has exceeded his or her powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4), and the arbitrator's award may properly be vacated. (See *Armendariz, supra,* 24 Cal.4th at pp. 106–107.)

### B. *The Restriction of Administrative Remedies*

As noted, the second question posed by plaintiff's petition for review is whether language in a mandatory employment arbitration agreement restricting an employee from seeking administrative remedies for violations of FEHA is lawful. As will be recalled, the arbitration agreement between plaintiff and defendant contained language stating that it was the intention of the parties to the agreement "to avoid the inconvenience, cost, and risk that accompany formal *administrative* or judicial proceedings." (Italics added.) He contends that this language must be interpreted as precluding plaintiff from seeking administrative remedies, and that such a provision is contrary to public policy. This provision, plaintiff contends, combined with the shortened statute of limitations noted above, renders the arbitration agreement unconscionable. Plaintiff therefore argues that we should not only uphold the trial

---

[4] We requested supplemental briefing by the parties on the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(5), which provides in pertinent part that one of the grounds for vacating an arbitration award is "other conduct of the arbitrators contrary to the provisions of this title." Because we resolve this case on the above grounds, we need not address whether the arbitrator's misinterpretation of section 1281.12 falls within the scope of the "other conduct" clause of section 1286.2, subdivision (a)(5).

court's vacatur of the arbitration award, but that we should invalidate the entire arbitration agreement and order the case to proceed in court.

 As recounted, although plaintiff resisted defendant's petition to compel arbitration, he did so on the grounds that defendant had waived the right to compel arbitration, and had failed to present the arbitration agreement in an understandable form. He did not raise the issue of unconscionability based on preclusion of administrative remedies. We therefore conclude that plaintiff has forfeited this issue. (See *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328–329 [27 Cal.Rptr.3d 10] [party to arbitration agreement is generally obliged to raise unconscionability issues in court at the time she initially resists arbitration]; see also *Moncharsh, supra*, 3 Cal.4th at pp. 30–31 [a party contending the entire arbitration agreement is unlawful generally must raise the issue at the outset in the trial court].)

We also conclude that the claim fails on the merits. First, we read the above quoted language as merely precatory, i.e., as a statement of purpose, that does not in itself operate to preclude plaintiff from pursuing any administrative remedy. Second, even if the agreement were understood to preclude "formal administrative . . . proceedings," it would not be unlawful in all possible applications. It is true that the United States Supreme Court has recognized in *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279 [151 L.Ed.2d 755, 122 S.Ct. 754] that an arbitration agreement between an employer and an employee is not effective to bar the Equal Employment Opportunity Commission from prosecuting statutory antidiscrimination violations. And we have stated in *Armendariz, supra*, 24 Cal.4th at page 99, footnote 6, anticipating *Waffle House*: "Nothing in this opinion . . . should be interpreted as implying that an arbitration agreement can restrict an employee's resort to the Department of Fair Employment and Housing, the administrative agency charged with prosecuting complaints made under the FEHA, or that the department would be prevented from carrying out its statutory functions by an arbitration agreement to which it is not a party."

But as the United States Supreme Court recently recognized in *Preston v. Ferrer* (2008) 552 U.S. 346 [169 L.Ed.2d 917, 128 S.Ct. 978], an arbitration agreement could, under federal law, validly limit the resort of an employee to an administrative agency that acts as an adjudicator, rather than as a prosecutor, of employment claims, such as the Labor Commissioner in this state. (*Id.* at p. 359.) Even assuming an arbitration clause purporting to override the statutory jurisdiction of an administrative adjudicator would violate California law, state law would be preempted when applied to an arbitration agreement covered by the Federal Arbitration Act. (552 U.S. at p. 360.)

When an arbitration provision is ambiguous, we will interpret that provision, if reasonable, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473 [92 Cal.Rptr.3d 153]; see also Civ. Code, § 3541 ["[a]n interpretation which gives effect [to an agreement] is preferred to one which makes void"]; Civ. Code, § 1643 [if possible without violating the parties' unambiguous intent, a contract is interpreted so as to make it "lawful, operative, definite, reasonable, and capable of being carried into effect"].) In the present case, we construe the language of the arbitration agreement, stating that the parties to the agreement intend "to avoid the inconvenience, cost, and risk that accompany formal administrative or judicial proceedings," as stating an intention to lawfully preclude or restrict the parties to the arbitration agreement from submitting their claims for adjudication to an administrative entity such as the Labor Commissioner, at least to the extent set forth by the United States Supreme Court in *Preston.* We therefore conclude that the inclusion of a provision limiting resort to an administrative forum does not render the arbitration agreement unconscionable or unenforceable.[5]

Finally, the Court of Appeal noted that defendant advanced certain "procedural arguments" as to why the trial court improperly granted plaintiff's petition to vacate the award, and deemed these moot in light of its determination that the trial court had erred in vacating the award. These issues pertain to the timeliness and sufficiency of plaintiff's opposition to Pearson's petition

---

[5] Plaintiff also contends that the one-year statute of limitations provided in the arbitration agreement is unlawful and independently renders the agreement unconscionable. As noted above, under FEHA, an administrative complaint with the DFEH must be filed within one year of the date of the alleged discriminatory action. (Gov. Code, § 12960, subd. (d).) The DFEH, if it decides not to pursue the matter, must issue a right-to-sue letter within a year after the charges are filed. (*Id.*, § 12965, subd. (b).) The complainant then has one year from the date of that letter to file a civil action. (*Id.*, subd. (d)(2).) Plaintiff claims, inter alia, that because the one-year provision in the contract does not explicitly include the above provisions for filing claims with the DFEH, and appears to adhere to a rigid one-year deadline, it is contrary to public policy and renders the arbitration agreement unconscionable.

This issue was not presented in the petition for review. Generally we will not decide issues not raised in the petition for review or answer, although we have discretion to do so. (Cal. Rules of Court, rule 8.516(b).) Here, the main focus of the briefing was on whether the trial court correctly vacated the arbitration award, not on whether the arbitration agreement was unconscionable because of an allegedly unlawful limitations provision. Moreover, as discussed above, plaintiff did not advance this unconscionability claim before the trial court in resisting defendant's motion to compel arbitration, and it is therefore forfeit. (See *Cummings v. Future Nissan, supra,* 128 Cal.App.4th at pp. 328–329.) We therefore decline to decide this issue.

to confirm the arbitration award, and whether these alleged defects undermined the validity of the trial court's order vacating the arbitration award. We now remand the case to the Court of Appeal to have it decide these issues.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the cause is remanded for proceedings consistent with this opinion.

George, C. J., Kennard, J., and Werdegar, J., concurred.

**BAXTER, J.,** Dissenting.—I dissent from part II.A. (part A) of the majority's decision (maj. opn., *ante,* at pp. 672–680), which holds this: Even if the parties to a mandatory employment arbitration agreement did not agree to arbitral conformity with rules of law or to expanded judicial review, the arbitral resolution of the employee's statutory age discrimination claim is subject to court review if the claim was found time-barred. If the court determines that the arbitral award in the employer's favor reflects an error of law, then the award must be vacated pursuant to Code of Civil Procedure[1] section 1286.2, subdivision (a)(4) (section 1286.2(a)(4)), which requires vacatur when a court finds "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

I cannot join in this unsupported and unprecedented move to judicialize the arbitration process. The majority misapplies section 1286.2(a)(4) and the principles articulated in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] *(Moncharsh)* and *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] *(Armendariz),* so as to significantly undermine the strong public policy favoring arbitration as a fair, quick, and inexpensive means of resolving disputes. Because I believe that review of the arbitral decision here is unauthorized, my dissent to part A expresses no opinion as to whether the arbitrator's application of the contractual time bar was legally erroneous, but assumes for purposes of argument that it was.[2]

At the same time, I concur in part II.B. of the majority's decision, which concludes plaintiff has forfeited the claim challenging the arbitration agreement as unconscionable and unenforceable. (Maj. opn., *ante,* at p. 681.)

---

[1] Unless otherwise indicated, all further statutory references are to this code.

[2] As part A of the majority opinion indicates, there is no precedent governing the interpretation and application of Code of Civil Procedure section 1281.12 and its tolling provision. Accordingly, while I assume for purposes of argument that the arbitral decision reflects legal error, I do not accept the majority's suggestion that it amounts to a " 'manifest disregard of the law.' " (Maj. opn., *ante,* at pp. 677–678, fn. 3.)

## I.

*Moncharsh, supra*, 3 Cal.4th 1, is our seminal decision governing judicial review of arbitration awards. *Moncharsh* was decided in the context of an employment dispute that did not involve a claim for violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). In assessing the extent to which a trial court may review an arbitral decision for errors of law, *Moncharsh* emphasized that minimizing judicial intervention in the arbitration process vindicates the intentions and expectations of the parties to an arbitration agreement in two significant ways.

First, "[b]ecause the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, *arbitral finality is a core component of the parties' agreement to submit to arbitration*. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so*. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Moncharsh, supra*, 3 Cal.4th at p. 10, first italics added, fn. omitted; see also *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1355 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*Cable Connection*), quoting *Moncharsh*; *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534 [79 Cal.Rptr.3d 370, 187 P.3d 86] (*Berglund*).)

Second, " '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citations.]" (*Moncharsh, supra*, 3 Cal.4th at pp. 10–11; see also *Cable Connection, supra*, 44 Cal.4th at p. 1355, quoting *Moncharsh*; *Berglund, supra*, 44 Cal.4th at p. 534.) Hence, parties to an arbitration agreement " ' "may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review." [Citation.]' " (*Moncharsh*, at p. 11.) Indeed, by voluntarily submitting to arbitration, the contracting parties have "*agreed to bear [the risk of arbitral error] in return for a quick, inexpensive, and conclusive resolution to their dispute*." (*Ibid.*, italics added; see also *Berglund*, at p. 534.)

The Legislature, having enacted a comprehensive statutory scheme regulating private arbitration (the California Arbitration Act; § 1280 et seq.), "expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh, supra*, 3

Cal.4th at p. 9.) Therefore, "[a]bsent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Id.* at p. 32.)

Upon carefully weighing these considerations, *Moncharsh* concluded that, where, as here, there is no limiting clause in the parties' arbitration agreement,[3] an arbitral award "is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction). Further, the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Moncharsh, supra*, 3 Cal.4th at p. 33; see also *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775 [94 Cal.Rptr.2d 597, 996 P.2d 699].) Applying these principles in the instant case leads to only one conclusion: the arbitral decision finding plaintiff's FEHA claim time-barred is not subject to judicial review and vacatur, even though the decision is based on a legal error that forecloses plaintiff from proceeding on the merits of that claim.

In holding to the contrary, the majority concludes judicial review and vacatur are proper under section 1286.2(a)(4), which authorizes vacatur of an arbitration award if the arbitrators exceeded their powers. (Maj. opn., *ante*, at p. 680.) That is plain wrong. "It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh, supra*, 3 Cal.4th at p. 28 [addressing the predecessor to § 1286.2(a)(4)]; see also *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 [77 Cal.Rptr.3d 613, 184 P.3d 739]; *Moshonov v. Walsh, supra*, 22 Cal.4th at p. 779.)

The majority also reasons that, because "there was no opportunity for bargaining over the arbitration agreement in this case," it cannot be said that "plaintiff merely received the justice he bargained for." (Maj. opn., *ante*, at p. 680.) That reasoning is faulty. Although a court will scrutinize an arbitration provision in an adhesion contract to determine whether the provision is unduly oppressive or unconscionable, and therefore subject to revocation (see § 1281.2, subd. (b); *Armendariz, supra*, 24 Cal.4th at pp. 113–114), the adhesive nature of a contract appears irrelevant once the arbitration provision is found enforceable and the question remaining for

---

[3] Parties to an arbitration agreement may limit the arbitral process by expressly agreeing that "legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection, supra*, 44 Cal.4th at p. 1361.) The majority acknowledges that no limiting clause exists in this case. (Maj. opn., *ante*, at p. 676, fn. 2.)

determination is whether section 1286.2 authorizes judicial review and vacatur. Contrary to the majority's suggestion, if an employee signed an employment contract containing an enforceable arbitration agreement as a condition of employment (*Moncharsh, supra,* 3 Cal.4th at pp. 6–7), then the risk of arbitral mistake is acceptable because the parties "voluntarily" submitted to the arbitration and "agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Id.* at p. 11.)[4]

## II.

Unlike *Moncharsh, Armendariz, supra,* 24 Cal.4th 83, did not concern judicial review of an arbitration award. Rather, *Armendariz* arose in the context of a petition to compel arbitration and addressed only the enforceability of a mandatory employment arbitration agreement. (*Id.* at pp. 91–92.) Rejecting the contention that employees may never be compelled to arbitrate discrimination claims brought under the FEHA, *Armendariz* concluded "such claims are in fact arbitrable if the arbitration permits an employee to vindicate his or her statutory rights." (24 Cal.4th at p. 90.)

As *Armendariz* explained, an employment agreement for mandatory arbitration of a FEHA claim is valid and enforceable if the agreement (1) does not limit the remedies normally available under the FEHA; (2) allows discovery sufficient to adequately arbitrate the FEHA claim; (3) provides for a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based; and (4) does not require the employee to bear any type of expenses greater than the usual costs incurred during litigation (that is, the employer must pay costs that are unique to arbitration). (*Armendariz,* 24 Cal.4th at pp. 103–113; but see *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1085–1089 [130 Cal.Rptr.2d 892, 63 P.3d 979] (conc. & dis. opn. of Baxter, J.) [disagreeing with *Armendariz's* views on cost allocation in light of *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 [148 L.Ed.2d 373, 121 S.Ct. 513]].) If the arbitration agreement does not make these requirements explicit, then the requirements are to be implied, so long as they are not inconsistent with the agreement. (See *Armendariz,* at pp. 104, 106, 107, 113.) When a

---

[4] *Moncharsh's* conclusion that an enforceable arbitration agreement is subject to the limited judicial review provided in the California Arbitration Act is in accord with the views of the United States Supreme Court. For instance, in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647] (*Gilmer*), the high court rejected the contention that inequality in bargaining power is a sufficient reason to categorically preclude enforcement of compulsory arbitration agreements in the employment context; at the same time, the court found that claims for violations of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.) are arbitrable, and that the limited judicial review provided in the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) is adequate to vindicate such claims. (*Gilmer,* at p. 32, fn. 4.)

mandatory arbitration agreement satisfies the *Armendariz* requirements, then a petition to compel arbitration of a FEHA claim is properly granted.

There appears no question here that the parties' mandatory arbitration agreement may be interpreted consistently with the four *Armendariz* requirements. That being the case, the superior court found the agreement enforceable and sent the matter to arbitration. In contrast to the situation in *Armendariz*, the parties here actually appeared before an arbitrator, who made an award in defendant's favor after hearing evidence and arguments on an affirmative defense. But because the instant matter concerns the cross-petitions to confirm or vacate that award, and not the earlier petition to compel arbitration, the parties deserve to receive the benefit of their bargain. That bargained-for benefit is the enforcement of the arbitration award pursuant to the California Arbitration Act and the principles articulated in *Moncharsh, supra*, 3 Cal.4th 1, which prohibit judicial review and vacatur of the award for legal error, even if such error bars a hearing on the merits of plaintiff's FEHA claim.

In hunting down support for expanding judicial involvement in the arbitration process, the majority states: "The *Moncharsh* court recognized 'that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision' such as when 'granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights.' (*Moncharsh, supra*, 3 Cal.4th at p. 32.) Because the issue did not arise in that case, the *Moncharsh* court had no occasion to develop this exception." (Maj. opn., *ante*, at p. 676.)

The majority does not say so, but *Moncharsh* supported its suggestion that protection of a statutory right may warrant an exception to the general rule of nonreviewability with an "accord" citation to *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 225–227 [96 L.Ed.2d 185, 107 S.Ct. 2332] (*McMahon*), and a parenthetical notation describing *McMahon* as holding that "federal statutory claims are arbitrable under the Federal Arbitration Act unless party opposing arbitration demonstrates 'that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.' " (*Moncharsh, supra*, 3 Cal.4th at p. 32.) Thus, with a nod to *McMahon*, *Moncharsh* left open the possibility that judicial review and vacatur may be appropriate if confirmation of an arbitration award were to contravene a party's statutory *right to trial*.

In support of its more invasive form of judicial review, the majority does in fact quote a portion of *Armendariz* that in turn quotes a different part of *McMahon*. (Maj. opn., *ante*, at p. 677.) But nothing in *McMahon* suggests that judicial review for legal error is appropriate when plaintiffs assert claims

based on unwaivable substantive rights protected by statute. If anything, *McMahon* and later Supreme Court decisions espouse views to the contrary.

In *McMahon, supra,* 482 U.S. 220, a brokerage firm and its registered representative were sued by their customers for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.) and the Securities Exchange Act of 1934 (Exchange Act; 15 U.S.C. § 78a et seq.). Despite the statutory nature of the plaintiffs' claims, the Supreme Court emphasized that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." (*McMahon,* at p. 226.) As the high court explained, " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " (*Id.* at pp. 229–230.)

It bears emphasis that the Supreme Court found no basis for limiting arbitration of the plaintiffs' Exchange Act claims, even though the substantive protections of the Exchange Act, like those of the FEHA, cannot be waived by agreement. (*McMahon, supra,* 482 U.S. at pp. 227–230.) In the part of McMahon that *Armendariz* quotes, the high court remarked that "although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute" at issue. (*McMahon,* at p. 232; see *Armendariz, supra,* 24 Cal.4th at p. 106.) Given the text of *McMahon*'s statement, its use as a springboard for expanding permissible review beyond the statutory grounds is puzzling. Indeed, the Supreme Court repeatedly cites this very same statement when rejecting claims that the FAA's provisions for judicial review, which do not authorize review for error, are too limited to protect rights under a statutory antidiscrimination law. (*14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. ___, ___, fn. 10 [173 L.Ed.2d 398, 129 S.Ct. 1456, 1471, fn. 10] [addressing claim under Age Discrimination in Employment Act of 1967]; *Gilmer, supra,* 500 U.S. at p. 32, fn. 4 [same]; cf. *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 584–589 [170 L.Ed.2d 254, 128 S.Ct. 1396] [grounds provided in FAA for vacatur are exclusive and do not permit judicial review for arbitral errors, even when parties contract to limit arbitral finality in this way].)

Consistent with the Supreme Court's decision in *McMahon,* our recognition that a statutory right may warrant an exception to the general rule of nonreviewability was previously restricted to situations in which arbitration impaired a statutory right to a judicial forum. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 981–983 [12 Cal.Rptr.3d 287, 88 P.3d 24] [judicial review of arbitrator's decision appropriate because enforcement of the attorney-client arbitration agreement at issue contravened the client's right under a specific statutory scheme to reject an arbitrator's decision and proceed to trial]; *Board*

*of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 276–277 [52 Cal.Rptr.2d 115, 914 P.2d 193] [judicial review of arbitrator's decision permissible where party claimed "an 'explicit legislative expression of public policy' that issues involving the reelection of probationary teachers not be subject to arbitration"]; see also *Berglund, supra,* 44 Cal.4th at pp. 538–539 [allowing full judicial review of arbitral discovery orders against nonparties to arbitration agreement in order to preserve the nonparties' legal rights].) But employees have no statutory right to a trial or judicial review of FEHA claims, and this narrow exception has no application here.

In short, there is nothing in *Armendariz,* or in *McMahon,* or in any other authority cited by the majority, that supports judicial review and vacatur when an arbitrator rules in favor of an affirmative defense that forecloses a hearing on the merits of an unwaivable statutory claim. Given the vast number of statutory schemes that can be claimed to protect unwaivable rights, as well as the myriad ways in which legal error can be claimed to preclude or impair a hearing on the merits, the majority's holding makes for an exception that will surely "swallow the rule of limited judicial review." (*Moncharsh, supra,* 3 Cal.4th at p. 28.)[5]

## III.

Part A of today's decision and the logic supporting it are confounding. The decision runs counter to the settled principle that arbitrators generally may rely on broad principles of justice and equity to reject a claim. It also contradicts our seminal case holding that an error of law causing substantial injustice does not provide grounds for judicial review. Perhaps most troubling, the decision is irreconcilable with the fundamental premise that the risk of arbitral error is what contracting parties bargain for in exchange for a quick, inexpensive, and conclusive resolution to their dispute.

---

[5] Apart from the above, I also question the majority's decision to allow judicial review and vacatur of an arbitral award only where the arbitrator erroneously rules in favor of the employer, but not when the ruling wrongly favors the employee. Although we generally find a lack of mutuality in an arbitration agreement troublesome when it favors the employer as the party with superior bargaining power (see *Armendariz, supra,* 24 Cal.4th at pp. 114–121), I see no basis or rationale for imposing a one-sided rule of judicial review where, as here, neither party can be faulted for the situation. In contrast to the majority's rule, each of the express statutory grounds for vacating or correcting an award is neutral in its application to the parties. (§§ 1286.2, 1286.6.)

Moreover, because the FAA preempts all state laws and rules disfavoring arbitration (see *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 271–272 [130 L.Ed.2d 753, 115 S.Ct. 834]), I have the additional concern that the FAA precludes this court from burdening the arbitral process as the majority does here, in the absence of an express legislative intent allowing such burdens. (See generally *Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pp. 1089–1095 (conc. & dis. opn. of Brown, J.) [disagreeing with majority's application of the *Armendariz* requirements to an action alleging wrongful termination in violation of public policy (*Tameny* claims)].)

I am aware that applying *Moncharsh* has a harsh effect on the employee in this instance. But it is not for us to second-guess the legal or equitable basis of the arbitral award. The employer's assertion of the time bar was a valid affirmative defense, and there is nothing to suggest the parties were unable to fairly present their arguments to the arbitrator on that question. Where, as here, there is no limiting clause and no statutory right to a trial or judicial forum, the effect of allowing review and vacatur of the arbitral award is to frustrate the parties' contractual expectations and to defeat the strong public policy favoring arbitration.

Chin, J., and Corrigan, J., concurred