Filed 1/9/25  Sanchez v. Wonderful Pistachios & Almonds CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SUSANA SANCHEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>WONDERFUL PISTACHIOS & ALMONDS LLC,<br><br>Defendant and Respondent. | F086635<br><br>(Super. Ct. No. 20CECG00111)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Fresno County.  Kimberly A. Gaab and Jeffrey Y. Hamilton, Jr., Judges.‡

The Wagner Law Group, Nicholas J.P. Wagner and David Douglas Doyle, for Plaintiff and Appellant.

Roll Law Group, J.P. Pecht and Michael M. Vasseghi, for Plaintiff and Respondent.

-ooOoo-

‡ Judge Gaab decided the petition to compel arbitration; Judge Hamilton ruled on the petitions to vacate and confirm the arbitration result.

Susana Sanchez sued her former employer, Wonderful Pistachios & Almonds (WPA), and certain known and unknown colleagues, for false imprisonment, intentionally inflicting emotional distress, and negligence. Because Sanchez had signed an arbitration agreement, WPA petitioned to compel arbitration and Sanchez opposed, arguing the agreement was unconscionable.

The trial court granted the petition to compel arbitration, and the parties proceeded to arbitration. Ultimately, the arbitrator dismissed Sanchez's claims because it found they were time barred. During the arbitration, Sanchez added a harassment claim under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), which was similarly dismissed.

Sanchez subsequently petitioned the trial court to vacate the arbitration result, arguing the arbitrator refused to hear evidence and was not empowered to dismiss the added harassment claim. The trial court disagreed.

On appeal, Sanchez contends the trial court erred in compelling arbitration and failing to vacate the result. We affirm.

## BACKGROUND[1]

WPA hired Sanchez to work "as a quality control technician" in its agricultural business. A few days after beginning work, Sanchez signed an arbitration agreement entitled "MUTUAL AGREEMENT TO ARBITRATE DISPUTES."

According to Sanchez, several weeks later, she "was the only female in a group of about fifteen men" when, while at work, she was "trapped" inside a shed by her "supervisor" and "coworker"—"the men had tied the doors from the outside[.]" "Sanchez went into an immediate state of panic." "She was uncertain of the[] men's intentions and was afraid for her life."

---

[1] The facts are based on allegations made in Sanchez's pleadings.

Another employee finally released her, after she was "imprisoned and subjected to immense psychological torture for over an hour and a half[.]" "She was forced to resign the following day," and "[n]o other employees"—who were all male—"were subjected to this type of treatment[.]"

Sanchez filed a complaint in the superior court based on the above facts, alleging the "following causes of action:" general negligence, intentional tort, "[f]alse imprisonment, intentional infliction of emotional distress[,] and exemplary damages[.]" WPA then petitioned to compel arbitration consistent with the signed arbitration agreement.

The trial court granted the petition to compel arbitration, over Sanchez's objection. The matter proceeded to arbitration, and WPA moved to dismiss the claims. The arbitrator granted dismissal, again over Sanchez's objection. Sanchez added a FEHA claim to the arbitration, which was similarly dismissed.

Sanchez subsequently petitioned the trial court to vacate the arbitration result. The trial court declined, and instead confirmed the result, i.e., dismissal.

## DISCUSSION

This appeal presents two questions. First, did the trial court err in compelling arbitration? Second, did the trial court err in failing to vacate the arbitration result? We find no error and affirm.

## I. Petition to Compel Was Properly Granted

First, Sanchez contends "[t]he motion to compel" arbitration "should have been denied[.]" She asserts the arbitration agreement "is unenforceable because it is unconscionable." WPA, of course, disagrees the agreement is unconscionable. We agree with WPA.

3.

**A. Additional Background**

The arbitration agreement in this case spans four *half* pages.[2]  It is separated into nine categories and begins with the statement the parties "voluntarily agree that any dispute[] or controversy arising" after the date the agreement is executed and "relating to" employment "shall be submitted to final and binding arbitration[.]"  It immediately explains "arbitration can be a speedy, cost-effective procedure for resolving disputes and [the parties] have mutually entered into this Agreement in the anticipation of gaining the benefit of this dispute resolution procedure."

Next, the arbitration agreement describes various "[e]xamples of claims, disputes[,] or controversies that must be resolved through" arbitration, including but "not limited to" "embezzlement, conversion," "personal injury," "tort[s]," "wrongful termination," and "discrimination and harassment … under" the FEHA.  It then explains "arbitration under this agreement shall be governed by the" Federal Arbitration Act (FAA) and "California Code of Civil Procedure" "including … its mandatory and permissive rights to discovery."  Arbitration itself is "administered by JAMS," whose "Rules [were] available from Human Resources" and also available "online free of charge[.]"[3]

The arbitration agreement states "[t]he arbitrator shall apply the laws of the jurisdiction in which" the parties transact.  It explains the "arbitrator's award is final and binding" and claims must commence "within the applicable statute of limitations."  The agreement notes certain "actions shall not be subject to mandatory arbitration[.]"  These actions include "small claims," "workers' compensation benefits," "unemployment insurance compensation benefits," and "administrative claims or charges before

---

[2] The trial court described "the agreement is four pages long because it includes both English and Spanish translations, which doubles its apparent length."

[3] The agreement provides a website link for the JAMS Rules.

applicable federal and state administrative agencies []such as California's Department of Fair Employment and Housing [(DFEH)][.]" The agreement recognizes it does not "restrict[] or prohibit[]" an employee "from filing a charge or complaint" with "any administrative agency" tasked with enforcing labor and employment laws. It concludes with a class action waiver, severability clause, and an acknowledgment the agreement was understood and agreed to, including "that [WPA] advised [Sanchez] to consult with an attorney of [her] choosing before signing [the] Agreement, and [she] had the opportunity to do so."

As noted, the trial court granted WPA's petition to compel arbitration based on the above agreement. The court noted Sanchez "claim[ed] she [did] not remember signing the agreement, "denie[d] the content or significance of [it] were explained to her, and … state[d] she signed [it] without time to review[.]" It also noted Sanchez asserted "[s]he was never advised to see an attorney[.]"

The trial court found "the [arbitration] agreement was a contract of adhesion, as it was presented … as a fine print document that had been prepared as a form" and on "a 'take it or leave it' proposition[.]" It believed "there [was] no indication [Sanchez] was allowed to negotiate or make any changes to the preprinted form[.]" It explained, however, Sanchez did "not state how much time she was given to consider the" agreement "nor [did] she state that she was subjected to any particular pressure to sign," and Sanchez failed to describe her "background, education[,] and experience[] which [were] relevant to show" whether she could understand the agreement.

Specifically, the trial court found Sanchez did not state "any facts showing that she was placed under significant pressure to sign the [arbitration] agreement without reading and understanding it first." Although she declared she signed " 'immediately … without time to review and consider,' " "it [was] not clear whether" she was pressured "or whether she simply chose not to take additional time to read it[.]" The court concluded

the arbitration agreement was "reasonably clear and specific, even if it [was] couched in fine print and include[d] some legal jargon," and was not "procedurally unconscionable."

The trial court further held Sanchez had "not shown that the [arbitration] agreement contained any unfair or one-sided terms that unduly favored" WPA. It explained the agreement was "very clear that it cover[ed] all claims related to [Sanchez's] employment … unless specifically excluded [by] the agreement." Finally, it found the fact the agreement allowed WPA to bring claims in arbitration against Sanchez, "for conversion or embezzlement," did not contribute to unconscionability. Rather, the possibility simply demonstrated "the agreement [was] reciprocal in nature," i.e., "the opposite of one-sided[.]"

## B. Analysis

"California law strongly favors arbitration. Through the comprehensive provisions of the California Arbitration Act (Code Civ. Proc.,[4] § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] As with the FAA (9 U.S.C. § 1 et seq.), California law establishes 'a presumption in favor of arbitrability.' [Citation.] An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

Nonetheless, " ' "[g]enerally applicable contract defenses, such as … unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO, supra,* 8 Cal.5th at p. 125.) "The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

[Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Ibid.*)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO, supra,* 8 Cal.5th at pp. 125-126.)

"The burden of proving unconscionability rests upon the party asserting it." (*OTO, supra,* 8 Cal.5th at p. 126.) "Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law. [Citation.] If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).)

Sanchez contends the arbitration agreement here is procedurally unconscionable because she "had no choice but to sign" it, she "was never advised to contact an attorney," and "[i]t is inconceivable," due to its length, she "had an opportunity to review and understand" it. She also argues the agreement is "substantively unconscionable as a whole because of its excessive length, legalese[,] and complexity."

We agree with the trial court the arbitration agreement was not unconscionable. We address procedural and substantive unconscionability in turn.

7.

### 1. Procedural Unconscionability

The trial court correctly found the arbitration agreement was adhesive and Sanchez had no opportunity to negotiate. We conclude the agreement's adhesive nature alone is sufficient to establish procedural unconscionability. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915; *Ramirez, supra,* 16 Cal.5th at p. 494 ["Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' "].)

We also agree with the trial court, however, that Sanchez failed to establish any overt pressure to sign the arbitration agreement, other than that always associated with employment. (See *Ramirez, supra,* 16 Cal.5th at p. 494.) For example, the court properly ruled Sanchez presented no evidence regarding her education or the time she was permitted to consider and sign the agreement. Notably, the agreement itself, which she signed, indicates she was advised to consult an attorney. We must accept these factual findings because they are supported by substantial evidence. (*Id.* at p. 493.)

### 2. Substantive Unconscionability

Likewise, we agree with the trial court's legal conclusion there were no "unfair or one-sided terms" in the arbitration agreement. "[T]he unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party[.]' " (*Ramirez, supra,* 16 Cal.5th at p. 494.) " ' "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." ' " (*Id.* at p. 495.)

There is no unfairness in the arbitration agreement at issue. It is an evenhanded agreement, clearly delineating its scope and the applicable procedure. Sanchez decries the agreement's "vague references" to various laws and the " 'JAMS Rules.' " She also

claims WPA provided legal advice within the agreement because it states arbitration is a "speedy, cost-effective procedure for resolving disputes," obligating WPA to inform Sanchez to consult with an attorney. These points do not relate to unfairness and otherwise lack merit.

First, the trial court found Sanchez was informed to consult with an attorney and we must accept that fact. Second, although the arbitration agreement does reference various laws, the references are not vague or misleading. Although Sanchez correctly points out "JAMS" is not defined, she incorrectly ascribes vagueness to it. The agreement directly points the employee to the "JAMS Rules" which are apparently made available through the employer and online.[5]

Sanchez also believes the examples listed in the arbitration agreement describing which claims are subject to arbitration are reasonably interpreted as exhaustive. The agreement clearly, however, indicates the examples are not exhaustive and instead makes clear *all* claims, other than those specifically excluded, are arbitrable.

Another substantively-unconscionable example Sanchez marshals is a hypothetical situation in which an "employer … accuse[s an] employee of embezzlement" and the "employee … end[s] up with a judgment against him or her for their entire net worth without being able to see a judge." Similarly, she alleges an "employee could … be placed in a situation in which evidence could be obtained that could be used against them in a criminal proceeding." These possibilities are simply not one-sided or overly harsh— there is no reason an employer could not similarly incriminate itself in a hypothetical case. (See *Ramirez, supra,* 16 Cal.5th at pp. 494-495 ["Not all one-sided contract provisions are unconscionable; hence the various intensifiers in … formulation[]: 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable.' "].)

---

[5] There is no allegation the "JAMS Rules" were neither available in-person nor online.

Finally, Sanchez claims the class action waiver and language clause render the arbitration agreement unconscionable. She does not explain how these provisions are relevant to her case, let alone how they establish unconscionability. Instead, she claims a "lay person does not know what" a class action waiver is and asks a "rhetorical question" about how "an employee" could "be bound" to a translation "he or she does not understand[.]" Sanchez cites to no law nor makes any colorable argument these provisions are unconscionable. In total, we find the entire agreement lawful.

## II. Petition to Vacate Was Properly Denied

Next, Sanchez argues the arbitration result "should be vacated" for three reasons. First, she believes the arbitrator violated the law by dismissing her claims as time-barred because it refused to hear evidence distinguishing the claims from one another, which would have permitted some claims to move forward. Second, she contends the arbitrator erred in dismissing the FEHA claim as time-barred and, in any event, the arbitration agreement itself did not apply to the claim.

Third, Sanchez asserts "JAMS Rule 18 is void because it violates" her "legal right to have the [a]rbitrator hear all the evidence before making a decision on the merits." We reject each point.

### A. Additional Background

In arbitration, WPA moved for dismissal pursuant to JAMS Rule 18. That rule states "[t]he Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion."

WPA asserted each claim against it was barred by the "applicable statute[] of limitations." It argued the limitations period to bring a false imprisonment claim had lapsed, and because the "emotional distress claim [was] derivative," it likewise was

barred. Similarly, it argued the negligence claim fell under "the gravamen of" false imprisonment so it too was barred.[6]

Sanchez opposed the dismissal motion and sought an evidentiary hearing to prove each of her claims were not inextricably intertwined, i.e., subject to separate limitations periods. The arbitrator denied Sanchez's request but nonetheless permitted her to "argue [any] papers that [were] filed, including … evidentiary papers." Ultimately, the arbitrator dismissed the false imprisonment, emotional distress, and negligence claims, holding "[t]he gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies." In so holding, it found immaterial Sanchez's argument the facts underlying each claim were "not identical[.]"

Simultaneously, Sanchez sought to add to arbitration "an additional claim for sexual harassment and discrimination under the Fair Employment and Housing Act[.]" The arbitrator granted that request, and WPA again moved to dismiss the new claim "as untimely as a matter of law[.]"

The arbitrator agreed with WPA the FEHA claim was untimely. It found, although Sanchez had recently received a "Right to Sue Letter" from the DFEH, the claim had "lapsed" because Sanchez had previously received a similar letter two years earlier but failed to file a timely claim.[7] It also concluded a then-recent law—Assembly

---

[6] The alleged incidents took place in October 2018. Sanchez filed the complaint in January 2020.

[7] The first right-to-sue letter stated the DFEH would "take no further action on [Sanchez's] complaint" and informed her she had "one year from the date of [the] letter" to file a "civil action[.]" The second letter, referenced in the record in a DFEH notice, does not itself appear. Instead, that notice indicates the case was again closed and a right-to-sue letter was enclosed with the notice.

"[U]nder the FEHA, private civil actions by employees are the primary means of enforcing employees' rights to be free of unlawful discrimination, once the Department of Fair Employment and Housing determines it will not file a complaint against the

Bill No. 9 (2019-2020 Reg. Sess.) (AB 9)—did not apply retroactively to revive the claim. In total, the arbitrator dismissed all claims and granted judgment in WPA's favor.

WPA subsequently petitioned the trial court to confirm the arbitration result. Sanchez, for her part, petitioned to vacate the result. In a memorandum accompanying her petition, Sanchez raised three distinct issues, essentially claiming the arbitrator failed to receive evidence, the FEHA cause was not subject to arbitration, and JAMS Rule 18 was invalid. The trial court denied the petition to vacate, and granted the petition to confirm.

The trial court rejected the argument the arbitrator misapplied the statute of limitations because legal error was not a basis to vacate an arbitration result. The court then analogized WPA's dismissal motion "to a demurrer" and found any "extrinsic evidence" was immaterial to the arbitrator's ruling. It found the arbitration agreement covered "claims under FEHA for harassment and discrimination," and Sanchez "voluntarily submitted" the FEHA claim to arbitration, essentially waiving the issue. Finally, it held Sanchez failed to prove JAMS Rule 18 was "void or too vague to be enforceable."

**B. Analysis**

Sanchez presents four distinct reasons to vacate the arbitration result. First, she complains she "was entitled to present all of her evidence showing the factual distinction between [her] causes of action prior to the [a]rbitrator dismissing" the complaint.

---

employer." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 112 (*Armendariz*).) "The DFEH is obligated to investigate each complaint and decide whether to file an accusation. [Citations.] If it has not filed an accusation within 150 days, it must offer the employee a right-to-sue letter on request; if it has not filed an accusation within one year, it must issue the employee a right-to-sue letter as a matter of right. [Citation.] Exhaustion of these procedures is mandatory; an employee may not proceed in court with a FEHA claim without first obtaining a right-to-sue letter." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 106 (*McDonald*).)

Second, the " 'gravamen' " test applied by the arbitrator was improper. Third, the FEHA claim was wrongly dismissed. Four, "JAMS Rule 18 is void because it violates [the] legal right to" present evidence in an arbitration proceeding.

The contentions lack merit. We discuss each in turn.

### 1. Legal Overview

" 'Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1104-1105 (*Royal*).) " '[I]t is the general rule that, "The merits of the controversy between the parties are not subject to judicial review." [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law.' " (*Id.* at p. 1105.)

" 'On the other hand, arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal.' [Citation.] 'Precisely because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process. [Citation.]' [Citation.] Indeed, one of the reasons 'why we tolerate the risk of an erroneous decision' by arbitrators is the existence of statutes permitting judicial review of the fairness of the arbitration process." (*Royal, supra,* 2 Cal.App.5th at p. 1105.)

"One such statute is section 1286.2, which enumerates 'grounds which will justify vacating an arbitration award.' [Citation.] Section 1286.2 provides in pertinent part that a trial court 'shall vacate' an arbitration award if it finds that '[t]he rights of the party

13.

were substantially prejudiced by misconduct of a neutral arbitrator'; '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted'; or '[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators … to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.' (§ 1286.2, subds. (a)(3), (a)(4), (a)(5).) The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in section 1286.2 applies and that the party was prejudiced by the arbitrator's error." (*Royal, supra,* 2 Cal.App.5th at pp. 1105-1106.)

### 2. Presenting Evidence

Section 1282.2, subdivision (d) provides "parties" in arbitration "are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed." Similarly, a trial "court shall vacate the" arbitration result if the arbitrator refused "to hear evidence material to the controversy[.]" (§ 1286.2, subd. (a) & (a)(5).) It "does not mean," however, "that the evidence must be orally presented or that live testimony is required." (*Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105 (*Schlessinger*).)

"The parties may be heard on the papers rather than at a live hearing[.]" (*Royal, supra,* 2 Cal.App.5th at p. 1108.) Here, the arbitrator decided to determine the statute of limitations issue without an evidentiary hearing, but still afforded Sanchez the opportunity to present evidence through written submission and oral argument.

Although section 1282.2 entitles a party "to be heard," it is "prefaced with the words '[u]nless the arbitration agreement otherwise provides.' " (*Schlessinger, supra,* 40 Cal.App.4th at p. 1106.) The arbitration agreement in this case specifically permitted

14.

a "[s]ummary [d]isposition" motion. In total, the agreement is compliant with law and Sanchez was fairly afforded the opportunity to present evidence.[8]

### 3. Statute of Limitations and Legal Error

"Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) This case is no exception. Even if we agreed the arbitrator erred in finding the action barred by a statute of limitations, we are not empowered to intervene on that basis.[9] (§ 1286.2.)

### 4. FEHA Dismissal

Next, Sanchez challenges the FEHA claim dismissal. She argues a "revised statute" "provides that a [FEHA] claim may be filed within three years following the commission of the act," i.e., the statute of limitations was not violated and the arbitrator improperly applied a one-year statute of limitations. She also asserts the claim itself was not subject to arbitration. We are unpersuaded.

First, a ruling on the statute of limitations issue ordinarily presents a legal error we are not empowered to review. (*Richey, supra,* 60 Cal.4th at p. 916; § 1286.2.) Nonetheless, we note, at the time the alleged incidents occurred in this case, the limitations period to bring a FEHA claim was one year. (See, e.g., *Ramirez, supra,*

---

[8] The arbitrator made clear it had read and considered Sanchez's evidentiary points, stating she "laid … out" "a whole bunch" of factual distinctions in her request for an evidentiary hearing. However, the arbitrator and Judge Hamilton also found that the purported offers of proof as to distinctions between the IIED claims and the false imprisonment claims were lacking in specificity and did not suggest the arbitrator would have found otherwise on the statute of limitations.

[9] We take no position on the statute-of-limitations issue in this case. We note, however, the arbitrator relied on cases applying a gravamen analysis to determine the applicable statute of limitations. (See, e.g., *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889 ["The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled."].)

15.

16 Cal.5th at p. 500, fn. 4 [employee has "one year after the issuance of the right-to-sue letter to file a lawsuit alleging … FEHA claims[.]"].)  AB 9 changed the limitations period to three years, but specifically noted the legislation "shall not be interpreted to revive lapsed claims."  (AB 9, Stats. 2019, ch. 709, § 3.)

The precise statute of limitations at issue, and the one we conclude Sanchez violated, is the one-year period *after* receiving a right-to-sue letter.  (Gov. Code, § 12965, subd. (c); *Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1413 (*Acuna*) [Gov. Code, § "12965 concerns a separate statutory deadline applicable *after* the DFEH issues a right-to-sue notice."].)  There is no tenable argument *that* one-year period did not lapse prior to Sanchez seeking to vindicate a FEHA right—here, by filing the FEHA claim in the arbitral forum.[10]  Instead, Sanchez followed up the first letter with a second complaint to the DFEH.

An employee "cannot revive … expired claims by filing a new DFEH complaint[.]"  (*Acuna, supra,* 217 Cal.App.4th at p. 1417.)  It appears clear Sanchez conflates a DFEH right-to-sue letter with a legal determination her claim is valid, rather than a simple acknowledgment of her right to file her own lawsuit, even if that lawsuit ultimately lacks merit.  Such a letter is not a determination a claim is either legally valid or meritorious—it is simply a jurisdictional prerequisite to filing a complaint in court.  (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345; *McDonald, supra,* 45 Cal.4th at p. 106.)

Undeterred, in Sanchez's reply brief, she claims "[c]lear errors of law that prevent a party from obtaining a hearing on the merits of a FEHA claim are subject to review."[11]

---

[10] Sanchez originally received a right-to-sue letter in October 2019.  Without filing a FEHA claim, she received a second letter in October 2021.  An employee has "one year after the issuance of the right-to-sue letter to file a lawsuit alleging … FEHA claims[.]"  (*Ramirez, supra,* 16 Cal.4th at p. 500, fn. 4.)

[11] Ordinarily, "arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party."  (*People v. Ng* (2022) 13 Cal.5th

It is true the California Supreme Court has held when "an employee subject to a mandatory employment-arbitration agreement is unable to obtain a hearing on the merits of his [or her] FEHA claims, or claims based on other unwaivable statutory rights, because of an arbitration award based on legal error, the trial court does not err in vacating the award." (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680 (*Pearson*).) Sanchez's counsel relied heavily on the *Pearson* case in his oral argument. However, the holding is inapposite.

There is no legal error in this case relative to the FEHA claim. The FEHA limitations period in this case, discussed above, was not timely satisfied. (See Gov. Code, § 12965, subd. (c); *Acuna, supra,* 217 Cal.App.4th at p. 1413.) Accordingly, *Pearson's* "narrow[] rule" inviting vacatur due to legal error is inapplicable. (*Pearson, supra,* 48 Cal.4th at p. 679 [discussing "narrower rule" "sufficient" or deciding "only the case before" the court].)

The fatal flaw in these circumstances is Sanchez never timely followed up on the *first* letter. At bottom, she has not demonstrated, and cannot demonstrate, "clear legal error" regarding the FEHA timeliness issue. (See *Pearson, supra,* 48 Cal.4th at pp. 679-680.) We reject the contention the arbitrator committed legal error in deciding this issue.[12]

Second, the arbitration agreement, as described above, undoubtedly covers "discrimination and harassment … under" the FEHA. It also states "administrative claims or charges before" the DFEH are "not … subject to mandatory arbitration[.]"

---

448, 568, fn. 13.) We address the argument and decline to apply the forfeiture rule in this case.

[12] Sanchez suggests the arbitrator was not empowered to decide, or wrongly decided, whether the revised statute of limitations applied retroactively. We need not address the argument because it is clear it does not apply retroactively.

17.

Likewise, it notes employees are not prevented from filing complaints with administrative agencies. These provisions are consistent with the procedure in this case.

Sanchez voluntarily submitted her FEHA claim to arbitration. Nothing in the arbitration agreement prevented her from seeking relief through the DFEH—she did in fact, receiving her right-to-sue letter after the DFEH declined to pursue the matter. (*Ante,* fn. 7.) To the extent she believes the arbitrator's ruling on the FEHA claim is somehow not binding, review in this court is not ripe. On this record, Sanchez has not attempted to litigate her FEHA claim in court. In other words, Sanchez never presented the FEHA claim to the trial court and was never ordered to arbitrate it. In sum, because the arbitrator did not err in finding the FEHA claim untimely, we decline to vacate the arbitration result.[13]

### 5. JAMS Rule 18

Last, Sanchez complains "JAMS Rule 18 is void because it violates [her] legal right to have the [a]rbitrator hear all the evidence before making a decision on the merits." She also argues the rule imposes a "too vague" "burden of proof standard"— "likely" to prevail—necessary to move forward with a summary disposition motion. In other words, the rules require the arbitrator to "prejudge the case" and "make a preliminary finding that the moving party is 'likely' to prevail in order to hear a motion to dismiss."

Sanchez also contends the arbitrator could not determine the rule's validity and she was deprived of the opportunity to engage in discovery relative to the DFEH. We disagree with each point.

---

[13] Sanchez also suggests the DFEH was an indispensable party to the FEHA claim. The DFEH, however, declined to charge WPA, and was not a party otherwise bound by the arbitration agreement. In short, her point is irrelevant to the issue. (See *Armendariz, supra,* 24 Cal.4th at p. 112.)

Again, JAMS Rule 18 states, in full, "The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion." Notably, the rule as presented in the record does not include the objected to preliminary-and-likely-to-prevail language.

We have already explained section 1282.2 does not prohibit a summary adjudication motion in an arbitration proceeding. (*Schlessinger, supra,* 40 Cal.App.4th at pp. 1104-1107.) Nor does it necessitate "a live hearing …." (*Royal, supra,* 2 Cal.App.5th at p. 1108.) The parties here explicitly agreed to a summary procedure in the arbitration agreement by agreeing to the JAMS Rules.

The statutory right to present evidence in an arbitration proceeding "is not 'a back door … through which parties may routinely test the validity of legal theories of arbitrators.' [Citation.] Instead, it was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' " (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368.)

Here, the arbitrator did not prevent Sanchez from fairly presenting her case. The arbitrator allowed Sanchez to present her evidence through documentary filings and argue that evidence orally. The arbitrator then considered that evidence but ultimately found it immaterial to the statute-of-limitations issue.

Even if we assume, as argued by Sanchez, JAMS Rule 18 requires the arbitrator to make a preliminary likely-to-prevail finding, there is still no error.[14] Arbitration arises from a private contract and the parties are free to agree to any process they wish.[15] (See

---

[14] Admittedly, the arbitrator itself acknowledged a summary disposition motion may only proceed following a preliminary showing the " 'motion is likely to succeed and dispose of or narrow the issues in the case.' " That language is, however, nowhere in the JAMS Rules as presented in the record.

[15] Parties may not waive certain statutory rights. (See, generally, *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 13 ["whether a statutory right is unwaivable is

19.

*Schlessinger, supra,* 40 Cal.App.4th at p. 1106.) More importantly, the preliminary finding alleged in this case is not a final ruling on the merits. Nothing in the rule as described by Sanchez prohibits a party from presenting evidence and defending against a summary disposition motion. Indeed, Sanchez was afforded the opportunity to present evidence and defend against the motion in this case. We discern no error.

Finally, the record does not substantiate an inability to engage in discovery. Sanchez cites to nothing in the record, instead simply arguing she "should have been permitted to engage in discovery[.]" There is no evidence she was denied an opportunity to discover and investigate.[16]

In sum, JAMS Rule 18 is not void.[17] Sanchez was afforded an opportunity to present her case, at least as it pertained to the statute of limitations. At bottom, her complaint is the arbitrator misapplied the law, and she variously casts that argument, but that is not a valid basis to vacate an arbitration decision. The order denying vacation will stand.

---

a question that must be determined based on the context and purpose of the specific statute under consideration."].)

[16] Counsel for WPA declared, in an opposition to Sanchez's petition to vacate, Sanchez "failed to conduct *any* discovery"—a statement consistent with the record on appeal.

[17] Sanchez also claims the arbitrator was not empowered to decide whether JAMS Rule 18 was void. Again, she argued "it violate[d] [her] right to have an arbitrator hear all of the evidence[.]" JAMS Rule 11, however, states the arbitrator "shall resolve disputes about the interpretation and applicability of the [JAMS] Rules[.]" Contrary to Sanchez's assertion, we believe the rule sufficiently empowers the arbitrator to determine whether Rule 18 violates the right to present evidence. Perhaps more importantly, we have independently determined the rule is valid, and Sanchez does not point to any prejudice.

## DISPOSITION

The orders compelling arbitration and confirming the result are affirmed.  Each party shall bear its own costs.

SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.